OLEGARIO RIERA Y CIFUENTES, Plaintiff and Appellant, v. JOSEFINA B. MACÍAS DE RIERA, Defendant and Appellee.

No. 5011. Argued March 7, 1930.—Decided July 8, 1931.

J. de Guzman Benítez for appellant.   Pellón & Ayuso for appellee.

Mr. Justice Aldrey, delivered the opinion of the Court.

Don Olegario Riera Cifuentes, who resides in Madrid, Spain, brought suit in the District Court of San Juan of this Island against Doña Josefina B. Macías de Riera, to recover from her the sum of $50,000 and interest thereon stipulated at the rate of 8 per cent per annum; which debt was acknowledged by her in a document. The defendant did not deny having received the said sum as a loan, nor the authenticity of the instrument evidencing such obligation, but she avers in her cross-complaint that the same has been novated by means of a compromise agreement between the parties. The district court held that the obligation sought to be enforced had been novated by reason of the compromise agreement, and it therefore adjudged the plaintiff to carry out the terms of the compromise and dismissed the complaint. From that judgment the plaintiff has taken the present appeal.

The instrument on which the plaintiff based his action reads as follows:

"$50,000.

"I promise to pay to Don Olegario Riera y Cifuentes FIFTY THOU-SAND DOLLARS for value received to my entire satisfaction. Said sum shall draw interest at the rate of eight per cent (8%) per annum from this date.

"In order to secure this debt I have delivered in pledge to Mr. Riera the following certificates:

"No. 669, for 1250 shares of stock of the Central Pasto Viejo each of the par value of $20.

"No. 1519, for fifty shares of stock of the Central Cambalache each of $100 par value.

"No. 1675, for 50 shares of stock of Central Yabucoa each of $100 par value.

"These securities, which have been endorsed to Mr. Riera, are deposited with the Banco Territorial y Agrícola in the safe of Mr. Rafael Fabián, who is the person designated by Mr. Riera as the depositary of said stock.

"It is agreed that such dividends as may be declared on said stock shall belong and be payable to me.

"It is further agreed that I may cancel said note at any time or make partial payments on account and for that purpose I' may sell, as and when I shall deem it advisable, any or all of the stock so pledged, and the creditor shall be bound to endorse the certificates to the person designated by me.

"San Juan, P.· R., June 18, 1923.    (Signed) Josefina B. Macías de Riera.''

The following note was entered in manuscript form at the beginning of the instrument:

"On July 1, 1924, there were delivered to the·Banco Territorial y Agrícola the 1250 shares of stock of Central Pasto Viejo, at $20— $25,000—, plus 50 shares of stock ·of Central Yabucoa Sugar Company, at $70—$3,500—, making a total of $28,500, for the cancellation of a promissory note for the said sum of $28,000 owed by Mrs. Riera and secured by a mortgage on La Perla, said loan being thus canceled.   Disposal is made of these shares of stock in accordance with a cablegram from Olegario Riera to Rafael Fabián dated July 1, authorizing him to deliver all the shares of stock to Mrs. Riera. (Signed) Rafael Fabián."

The defendant is the widow of Don José Dimas Riera; she is known as Pepita; and her brother, Don Antonio Macías, is her attorney in fact.

The defendants introduced in evidence a letter from her creditor which reads thus:

"Olegario Riera Cifuentes, Paseo de la Castellana 49, P. O.. Box 6005, Madrid.   April 29, 1924.—Mr. Antonio Macías, San Juan, P. R.—My dear Antonio: I received your letter of the 25th of last month in which you speak of having met Don Rafael and of the unsatisfactory situation in which you find yourself.. Really it is to be regretted that the price of sugar being so high, which necessarily has improved the financial situation of that country, you

should continue in the same straits as usual. Confidence in the banks has revived, the financial strength of sugar interests is satisfactory, credit is firm, and this should help you to solve any financial difficulty. At this time of relative prosperity you ought to forge ahead and clear up the estate of the heirs. Every time I write to Don Rafael, I ask him most earnestly to help you and to furnish you with every means within his power in case of need. I made to him the same recommendations in a talk with him. Now, it is not my purpose, when the sale is effected of the stock of Pasto Viejo pledged to me, to have you send me the proceeds of the sale; on the contrary, you can use the same as a payment on account to the banks so that you can have the notes extended. The guarantee which such stock represents can be replaced with some other securities of Pepita, and in that way you may be able to wait for better times for selling the other securities if, as you say, they are still depreciated. What I said to Don Rafael is that I could not send you any more money and nothing was said about the money which I had already sent you. Anyway, call on Don Rafael, and let both of you decide what you think best, as I am writing to him for that purpose. My affectionate regards to the family, and I beg to remain, Very truly yours, (Signed) Olegario Riera.''

In 1926, the plaintiff, Don Olegario Riera, sent Don Edmundo García to Puerto Rico from Spain as his attorney in fact for the purpose of collecting the said sum of $50,000 and interest thereon. This agent attempted to collect this sum, but he was told that the obligation was not due because no time for payment was expressed in the promissory note; and some offers of settlement were made to him which he demanded should be put in writing so as to take them to Don Olegario Riera. Accordingly, the following proposals in writing were delivered to him:

"Offer of compromise regarding the credit of $50,000 in favor of Don Olegario Riera, and against Doña Josefina B. Macías de Riera.

"Without it being in any manner understood that Mrs. Riera considers as fixed or expired the time for the maturity of the instrument subscribed by her in favor of Don Olegario Riera, which time it shall be understood is not fixed or expired, and without it being understood either that she waives any right arising from such

contract, and for the purpose of compromising this difference, she makes the following proposals:

"FIRST: In payment of the obligation in favor of Don Olegario Riera, evidenced by an instrument dated June 18, 1923, Doña Josefina B. Macías de Riera, will deliver to Don Olegario Riera fifty (50) shares of stock of Central Cambalache; one hundred and fifty (150) shares of stock of the Banco Territorial y Agrícola de Puerto Rico; and a promissory note for five thousand dollars ($5,000), payable within one year.

"SECOND: Payment of fifteen thousand dollars ($15,000), in cash, and the balance, up to fifty thousand dollars ($50,000), within three years, with interest at the rate of six per cent per annum on said balance.

"San Juan, P. R., September 17, 1926.

"(Signed) Josefina B. de Riera.

"(Signed) By Antonio B. Macías.

"(Numbered 2863.)"

The attorney in fact, García, sailed for Spain, and on November 1, 1926, Don Luis Venegas, the local attorney in fact of Don Olegario Riera, received a cablegram from the latter reading as follows: "First proposition instrument Josefina Macías accepted. Please get securities depositing them bank my name." The defendant received also from Don Edmundo García the following cablegram. "Olegario accepted first proposition Pepita. Deliver securities Venegas. Mailing full details other matters. Edmundo." Thereupon Mr. Venegas called at once on Mr. Macías, informed him of the cablegram received, and made demand upon him for the delivery of the documents specified in the first proposition accepted by Don Olegario; but these documents were not so delivered because, as stated by Venegas in his testimony, Macías had answered that Mr. Edmundo García and himself had come to an understanding whereby the delivery of the securities in question, or the compliance with the proposal made was subject, as regards Mr. Riera, to a certain claim on the part of the children of Doña Josefina against Don Olegario in connection with some bonds of the

Central Boca Chica of Santo Domingo. As a result of that statement from Mr. Macías, Mr. Venegas, in agreement with him, sent the following cablegram to Don Olegario Riera: "Cable received. Macías says understanding with García was conditioned upon settlement of matter Boca Chica bonds. Willing to comply first proposition provided basis understanding is fulfilled. Venegas." On the following day Venegas received a cablegram as follows: "Confidential. Based on original or compromise instrument proceed to attach property of Josefina Macías enumerated first proposal and in addition Buena Vista and Perla estates as case may be. Get bond from Ochoa firm. Power of attorney by mail. Advise result. Olegario Riera." In view of this cablegram, Venegas had another interview with Macías, and, as the latter told him that if he had to deliver to him the securities he would attach them by reason of the other matter pending between the children of Don Pepe Riera and Don Olegario, Venegas cabled Mr. Riera as follows: "Complaint and attachment prepared ready for filing. Am sure properties to be attached will be re-attached by reason matter Boca Chica. Wise consult your attorney both phases case advising what must be done. Venegas." On the following day, this cablegram was answered by another one from Don Olegario, thus: "Never mind re-attachment. Having consulted Boca Chica matter I am sure she has no ground. Proceed urgently. Olegario Riera." Venegas then told Macías by telephone that in view of the latter despatch he would have to file the complaint and issue the attachment, and he did this hoping that they would deliver the securities and thus avoid an unpleasant situation, as he had been willing until the last moment, until the suit was commenced, to accept the securities and allow the compromise agreement to be carried out. Thereafter the complaint was filed, and the following cablegram was sent to Mr. Riera: "San Juan, P. R., Nov. 17, 1926.—Olegario Riera, Castellana 51, Madrid, Spain.—Complaint filed last Saturday, attached Perla, Bue-

navista interest, shares of stock Cambalache and Territorial. Venegas.''

Mr. Macías testified at the trial that Edmundo García told him to put in writing the offer of compromise made to him; that in handing the written proposals on the same day, he stated to Mr. García that there was pending a claim made by the estate of Don José Riera against Don Olegario regarding some bonds of the Central Boca Chica that belonged to said estate, to which García replied that he would take up this matter with Don Olegario in order that it be adjusted; that on being required by Venegas to comply with the terms of the proposition accepted by Don Olegario, he told him that he was willing to do so, but that he had agreed with Don Edmundo García to consider the Boca Chica matter and that Edmundo García, in a cablegram to him had stated: ''ample details about other matters by mail''; that he was ready to comply with the agreement, but that he expected that some solution would be given to the Boca Chica matter, in regard to which he never received the details in question; that the matter regarding the Boca Chica bonds was not mentioned in the compromise proposals which he delivered; that he did not incorporate it as a condition because he had told García to take it up with Don Olegario and, therefore, he expected that he would be advised regarding the matter; that it was not a condition for the delivery of the securities; and that he did not deliver them because he was waiting for the details promised in the cable received by him.

Venegas testified that Macías spoke to him about the Boca Chica matter.

Don Edmundo García testified by deposition that when he came to this Island to collect the $50,000 owed to Don Olegario Riera, no one mentioned to him any conditions other than those set forth in the document containing the offers of compromise delivered to him; that he promised Mrs. Riera that upon his arrival at Madrid he would write to her in

regard to other matters arising from business in the Dominican Republic which had nothing to do with the business that brought him here, and that he had ratified such promise by cable and by letter; that he had no knowledge that at the time of the offers of payment there was pending against Don Olegario any claim involving securities of Boca Chica or of any other kind; that Doña Josefina refused to pay the $50,000 on the ground that such payment was not due, and that while they were preparing the complaint and the motion for an attachment, the debtor, through her attorney, made the two offers of payment in writing.

Don Olegario Riera y Cifuentes testified that while in Madrid, Spain, he directed Don Rafael Fabián to deliver $50,000 to Doña Josefina, to have the obligation well secured and to draw up the instrument so that he might enforce it at any time convenient to him; that he never refused to deliver the securities given as collateral security for the promissory note, although out of liberality and desiring to help the debtor, as he had done by making her the loan in question and bestowing on her other little favors, he agreed to let her dispose of some of the said securities so that she might solve her financial troubles by taking advantage of a rise in the market, but on condition that said securities should be replaced by others; that when Edmundo García returned to Spain he did not tell the witness that there were any conditions for a settlement, other than those stated in the document, which the debtor or her attorney had demanded for the carrying out the aforesaid offer of compromise; and that at that time he had no commitments, business, or claims pending with the heirs of Don José Dimas Riera by reason of any Boca Chica matter or otherwise.

As the existence of the debt of $50,000 in favor of the appellant has been admitted, we are of the opinion that the first and essential question to be determined in the instant case is whether such obligation has been substituted or novated by the first of the two proposals for payment made

by the debtor and accepted by the creditor whereby it was stipulated that as payment of the $50,000 there would be forthwith delivered to the creditor a certain number of shares of stock of Central Cambalache and of the Banco Territorial y Agrícola and in addition a promissory note for $5,000 to mature within one year.

Once either of the proposals for payment of the $50,000 owed by the defendant was accepted by the creditor, as happened here with respect to the first proposal, it created a compromise agreement, as defined in section 1711 of the Civil Code, since by virtue thereof and in order to avoid a suit for the recovery of the debt the creditor agreed to accept the stock offered by the debtor in lieu of cash and the latter on her part agreed to pay forthwith, notwithstanding she understood that her obligation had not matured; a bilateral contract involving reciprocal obligations which bound both contracting parties. Manresa, vol. 12, p. 99.

In accordance with this offer of compromise which was accepted, the debtor bound herself to deliver forthwith to her creditor the specified shares of stock and the promissory note, and the creditor agreed to accept that form of payment of the $50,000 and interest thereon owed to him.

Did the parties discharge their respective obligations arising from said compromise agreement? The creditor complied with his, as upon acceptance of the offer of compromise made by the debtor he directed his attorney in fact in this Island to receive the said stock and the promissory note.

Did the debtor comply with hers? According to her and the trial court she did, as the attorney in fact of the defendant has testified that he had always been willing to deliver the said stock and the promissory note. However, from the facts stated at the beginning of this opinion and the consistent testimony of Mr. Macías and of Don Edmundo García, we know that the latter told the former that any proposal for a compromise made to him in regard to the payment of the $50,000 had to be in writing; that the two

propositions for a compromise were made in that way; and that it does not appear from the document in question that in either of said propositions it had been stipulated that a claim which the children of the defendant thought they held against Don Olegario Riera by reason of certain bonds of Central Boca Chica had first to be adjusted. We also know that Macías told García to speak to Don Olegario regarding the Boca Chica matter, and that Macías admitted in his testimony at the trial that that matter was not a condition precedent to the proposed compromise. Notwithstanding this, when Mr. Venegas informed Macías of the acceptance by Don Olegario of the first proposition and requested him to have his sister deliver the promissory note and the stock agreed upon, Mr. Macías instead of delivering them, as was incumbent on the debtor, stated that the carrying out of the compromise depended on the Boca Chica matter; that Edmundo García had informed him in his cablegram that he would send him by mail "ample details regarding other matters," and agreed with Venegas that Don Olegario should be advised by cable that, according to Macías, the understanding with García was made to depend on the settlement of the matter of the Boca Chica bonds; a condition which has been denied by Edmundo García.

Such an attitude on the part of Mr. Macías as the attorney in fact of the debtor convinces us that she did not fulfill her obligation to deliver the stock and the promissory note when Mr. Venegas demanded such delivery, the refusal being based on the pretext that the Santo Domingo matter must also be finally adjusted, which was not a condition submitted in writing to Don Olegario as requested by his attorney in fact García and was not, indeed, a condition of the compromise. Moreover, some eight days afterwards, when Mr. Venegas had instructions to file the complaint and to levy the attachment, he wanted to give the debtor another opportunity to comply with the obligation she had accepted in the compromise agreement, but Mr. Macías refused to

deliver the documents in question. How, then, can it be asserted or testified that she has always stood ready to perform the compromise agreement?

Let us consider now the effect of the failure on the part of the debtor and defendant to fulfill her obligation under the compromise agreement to deliver the promissory note and certain shares of stock.

When Don Olegario learned that these documents had not been delivered to Mr. Venegas, he gave instructions for the filing of the complaint, which was done, for the recovery of the $50,000 evidenced by the promissory note of 1923 with interest thereon, thus rescinding his acceptance of the compromise agreement.

Sections 1067 and 1091 of the Civil Code, in so far as now pertinent, read as follows:

Sec. 1067.—Persons obliged to deliver or to do something are in default from the moment when the creditor demands the fulfillment of their obligation, judicially or extrajudicially.

"* * * * * * *

"In mutual obligations none of the persons bound shall incur default if the other does not fulfill or does not submit to properly fulfill what is incumbent upon him. From the time one of the persons obligated fulfills his obligation the default begins for the other party.

"Sec. 1091.—The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

"The person prejudiced may choose between exacting the fulfillment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfillment, should the latter appear impossible.

"The court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period.

"This is understood without prejudice to the rights of third acquirers, in accordance with sections 1262 and 1265, and with the provisions of the mortgage law."

In accordance with the above provisions, as the plaintiff had fulfilled his obligation embodied in the compromise agreement, and as the debtor had failed to perform hers, the former was entitled to consider said agreement as rescinded. In a judgment rendered on January 4, 1866, the Supreme, Court of Spain has declared that one who fails to discharge an obligation assumed by him under a compromise agreement is not entitled to demand from the other party the performance on his part of the agreement, their duties being mutual and correlative; and in a judgment of December 17, 1869, it held that the nonperformance or violation of the terms of a contract operates as a rescission thereof. Therefore, Don Olegario Riera was entitled in this case to treat the compromise agreement as rescinded and to bring his action for the recovery of the $50,000. Once such agreement is rescinded, the compromise ceases to exist and the novation which would have arisen therefrom had the agreement subsisted must also fail.

In the original contract of 1923, in which the defendant acknowledged her indebtedness to the plaintiff in the sum of $50,000, the date of maturity of the debt was not expressed. In the complaint the court is prayed to declare that obligation due as from July, 1924, or to fix a term and adjudge the defendant to pay the debt on the date so fixed. The ground for the first prayer is subdivision 3 of section 1096 of the Civil Code which reads as follows:

"Section 1096.—The debtor shall lose all right to profit by the period—

"1.       *       *       *       *       *       *       *

"2.       *       *       *       *       *       *       *

"3. If by his own acts he should have reduced said guaranties after giving them, and if they disappear through a fortuitous event unless they are immediately substituted by new ones equally safe."

Although it was stipulated in the promissory note that the debtor could sell any or all of the stock pledged in order to cancel the obligation either totally or partially, however,

it may be seen from the letter of Don Olegario Riera dated April 29, 1924, that the financial situation of the defendant at that time was not satisfactory and the inference may be drawn that she was requested to deliver some of the stock pledged to meet other obligations, as he says in his letter that it was not his purpose when the sale should be, effected of the stock of Pasto Viejo pledged to him, to have the proceeds of the sale sent to him, and that the same could be used as payment to the banks on account; that the security such stock represented could be replaced by some other stock. As a result of that letter, on July, 1924, Don Rafael Fabián, as the depositary of the stock pledged and pursuant to telegraphic instructions from Don Olegario, delivered to the Banco Territorial y Agrícola the deposited shares of stock of Centrals Pasto Viejo and Yabucoa, amounting to $28,000, for the cancellation of a promissory note for a like sum subscribed by Mrs. Riera. This stock was not replaced by any other as indicated by Don Olegario, and in this way the security was reduced by the debtor's own act, because although the creditor consented to such delivery it was on condition that said shares be replaced by others. It can not, therefore, be claimed that the reduction in the security was brought about by an act of the creditor; and hence the debtor forfeited her right to take advantage of the term that the court might have fixed, none being expressed in the instrument, which became payable on demand pursuant to section 1096 of the Civil Code.

In view of the conclusions reached by us, the judgment appealed from must be reversed and another rendered instead sustaining the complaint and dismissing the cross-complaint, with costs against the defendant by reason of her obstinacy in the present case.

Mr. Justice Texidor took no part in the decision of this case.